1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GENE PALMER,

           Plaintiff,

vs.

TIENNEY MILNOR, ET AL.

           Defendants.

19-CV-00961-RAJ

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT WITH
PREJUDICE

NOTE ON MOTION CALENDAR
  DATE:  MARCH 6, 2020

      The defendants, Washington and Northern Idaho District Council of Laborers

(District Council), Laborers' International Union of North America Local 292 (Local 292)

Daniel J. Christofferson, et al., and Jamie Clark, et al., move this Court, pursuant to Fed. R. Civ.

P. 12(b)(6), to dismiss the plaintiff's complaint with prejudice on the basis that (1) Washington's

three-year statute of limitation bars plaintiff's causes of action, and that (2) Rooker-Feldman

Doctrine precludes this suit as it is a de facto appeal from a state court judgment.

## STATEMENT OF THE CASE

      On June 20, 2019,  Palmer filed a 1983 claim, Civil Rights Act, 42 U.S.C. 1983, and

various pendent state tort claims against several defendants.  The complained of acts giving rise

to the claims against the District Council, Local 292, Christofferson and Clark were Local 292's

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292

1

NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

"cooperation" with an L&I administrative investigation of Palmer's benefit claims and Local 292's "disclosure" of its work history records regarding Palmer to L&I, pursuant to an L&I investigative subpoena duces tecum. Palmer labels those acts and events as "[t]he crux of the matter" and "this nightmare". Pltf's. Comp. at 3, ¶ III; at 5, ln. 8. The "crux" is his 2007 Snohomish County criminal case, *State v. Palmer II, Gene Alfred*, No. 07-1-00525-5, and the "nightmare" is the reverberation of his 2008 personal bankruptcy case. *In re: Gene Palmer*, No. 08-1012-CMA & Adv. No. 15-01145-CMA.

"To determine when a claim accrues, the federal court thus focuses on the time period in which the complained of acts occurred, not on the time period in which the consequences of the acts became most painful". *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979; *Scott v. Washington*, No.: 2:19-CV-00517-RAJ-BAT (W.D.Wash.2019). The alleged acts of "cooperation" and "disclosure" between L&I and Local 292 were exclusive to the 2005-2007 time period, when Palmer was a member of Local 292 being referred for employment while receiving L&I benefits. There are no such acts after Palmer's membership terminated on April 2, 2007.

Also restrictive is the complaint's focal point that looks back solely to the 2005-2008 time period in which the complained of acts that are the basis of this complaint had occurred. Pltf's. Comp. at 3-15. Those pages laid bare the facts when Palmer's claims accrued. Palmer's statements and filings in other venues show that those acts, underlying his 1983 claim and pendent state tort claims, were known to him years before commencing this suit on June 20, 2019.

The premise for this suit rests upon Local 292's compliance with L&I investigative

subpoenas that exposed Palmer's criminal acts that were charged in the state's Information.  The complaint is a response to getting caught, for collecting L&I benefits while working in 2005-2006, which was a previous Palmer proclivity recited in the state's Affidavit of Probable Cause.  The complaint unfolds a long-ago trauma, self-inflicted though, motivating Palmer to continuously re-cycle his creation yet again in this federal court on June 20, 2019.

## STATEMENT OF FACTS

**A. Local 292's work history records disclosed to L&I showed Palmer working for *ARM Construction* at the same time receiving L&I benefits as charged in the Information filed on February 7, 2007.**

The prelude to this case is the criminal case against  Palmer and L&I's administrative investigation of Palmer.  L&I had "began to investigate Mr. Palmer in January 2006" because it received a report that he was receiving benefits while working.  *State v. Gene Alfred Palmer II,* 07-1-00525-5, Dkt.#93, at 2, ¶ 2, ln.5-8.   Francis Michael Leaman, L&I Investigations Supervisor, subpoenaed Local 292's work history records regarding Palmer. Ex. A; Ex. B.[1] This was a necessary preceding step to the state's Information charge that Palmer had worked for contractors during the period June 2005 through February 2006 and had received $13,035.88 in time loss compensation.  *Palmer II,* supra, Dkt.#1; Ex. C.  An Affidavit of Probable Cause (AFFIDAVIT) supported the Information.  Id., Dkt#2; Ex. D.

Local 292's hiring hall referral process generates work history records when Local 292 refers workers upon an employer's requests to the employer's job by dispatch. Ex. E, at 2, ¶ 3 & 4.  Employers report the monthly aggregate hours worked by a referred worker at an employer's jobsite to the Laborers-Employers Pension which establishes a work history record to determine

[1] The court may consider matters outside the pleadings without converting the 12(b)(6) motion to a summary judgment. *See* discussion below at section III.

the referred worker's eligibility for benefits.  Id., at 2, ¶ 4; Ex. F, at 1, ¶ 3 & 4.

Palmer joined Local 292 on May 18, 1992, but his membership was not continuous to the date his membership terminated on April 2, 2007.  Ex. E, at 2, ¶ 5.  Local 292's hiring hall referred Palmer to 42 various employers during his membership, but not thereafter because his membership had terminated.  Ex. E, at 3, ¶ 7; Ex. F, at 2, ¶ 8, & at 3.  During the period June 2005 through February 2006 when Palmer was working and receiving L&I benefits, the work history records established that Palmer worked for *Arm Construction* and five other contractors.  Ex. E, at 3, ¶ 8, ln 24-26--p. 4, ln.1-2; Ex. F, at 3.  June 2005 through February 2006 is the time period the state had filed an Information for Theft against Palmer.  *Palmer II,* supra, Dkt.#1 & Dkt.#2;  Ex. C & D.

**B. The cooperation and disclosure between L&I and Local 292 occurred on February 10, 2006 as a result of the "call" from Local 292 to L&I's Investigations Supervisor.**

**1.  The cooperation and disclosure: "The call".**

The AFFIDAVIT supporting the state's Information noted that "[*o*]*n February 10, 2006, Francis Michael Leaman  . . . received a call from Union Local 292 that the supposedly unable-to-work Palmer was working for a company called ARM as a painter on a bridge project",* that *"palmer was referred to all of the jobs through the Local 292…hiring hall,"* and that those hiring hall referrals had been to  *"[t]he employers . . . during the charged period included Archer Construction, Howard S. Wright Construction Co., Scarsella Brothers Inc, Novito Construction, and Southeast Directional Drilling LLC."  Palmer II*, supra, Dkt.#2; Ex. D, at 2-3. (Emp. added).

Palmer acknowledged the February 10, 2006 *call*:  *"The criminal complaint in the L&I theft case states that Leaman received the call from Dan [Kristofferson] at 9:00 in the morning*

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292                 4                 NOEL MCMURTRAY
                                                            P.O. BOX 3324
                                                            BELLEVUE, WA. 98009
                                                            206-419-3873

*after I was sent out on a job by dispatch & would do this every time, I was sent out ....*" (Emp. added.).  Pltf's Comp., at 9, ln. 1-5. (Palmer mistakes the criminal complaint for the Affidavit of Probable Cause.)

The theft dates charged in the state's Information and Amended Information and set out in the AFFIDAVIT were the same time period that Local 292's work history records verify that Palmer had been referred to *ARM Construction* in February 2006, and that *ARM Construction* was Palmer's only employer in February 2006.  <u>Ex. E</u>, at 3, ¶ 8, ln. 24-25; <u>Ex. F</u>, at 3; <u>Ex. G</u>, (Palmer's dispatch to *ARM*).

The work history records confirm the criminal pleadings that Palmer had been referred, during June 2005 through January 2006, to Archer Construction, Howard S. Wright Construction Co., Scarsella Brothers Inc, Novito Construction, and Southeast Directional drilling LLC. <u>Ex. E</u>, at 3, ¶ 8, ln. 25-26—p. 4, ln. 1-2.; <u>Ex. F</u>, at 3.

**2.  The cooperation and disclosure:  "every time I was sent out."**

The complaint alleges that Leaman and Kristofferson "would do this ["call"] *every time I was sent  out*, saying I was out working.  They worked together . . . ." Pltf's comp. at 9, ln. 4-6. (Emphasis added).  "Every time I was sent out" is inclusive of the charged theft period of June 6, 2005 through February 10, 2006 and refers exclusively to *Arm Construction* and the five other employers with whom he was employed and named in the AFFIDAVIT.  <u>Ex. D</u>.

In the five months before the beginning theft date, June 6, 2005, the work history records disclosed that Local 292 had not sent Palmer to work for employers, nor had it sent him to any employer in 2004 and 2003. <u>Ex. E</u>, at 3, ¶ 7, ln.18-20; <u>Ex. F</u>, at 2,¶, 8, at 3. There are no work history records for Palmer after March 2007 because his membership terminated on April 2,

2007.  Ex. E, at 3, ¶ 7, ln. 14-18; Ex. F, at 2, ¶ 8, ln. 3-4, & 3.

**C.  Palmer established by his statements and filings (2009-2010) his awareness of the alleged cooperation and disclosure between L&I and Local 292.**

Palmer had filed for L&I Benefits under claim nos. X-277743 and X-563970 and his claims were allowed and benefits were paid.  *In Re Gene A. Palmer, II*, Wa.Bd.Ind.Ins.App., Dkt. Nos. 0721701 & 0721702 (2010), at 9, Finding of Facts#1, lns. 30-32; Id., at 11, lns. 27-30. L&I ended the payments and Palmer appealed to the Board of Industrial Insurance Appeals (BIIA) on September 5, 2007.  The Board dismissed the appeals on June 10, 2010. *Id.*, at 1, ¶s 1 & 2, ln. 15-28.

L&I investigator Francis Michael Leaman issued two subpoenas dated January 5, 2006 and August 8, 2006, requesting Local 292's work history records regarding Palmer for the period "4-2002 to present" (subpoena 1/5/06) and for the period "2/2006 to present" (subpoena 8/8/06). Ex.A; Ex.B.  Attached to one subpoena was Leaman's business card and "a copy of a business card . . . for Francis Leaman" was provided by Local 292 to Palmer.  Pltf's Comp., at 7, ln. 4-5.

The two subpoenas displayed the RCW 51.04.040(1) authorization for L&I to issue administrative investigatory subpoenas for the production and examination of third-party records Ex. A; Ex. B.  The statute allows L&I to issue the subpoena without advanced Court approval, nor notice to the person who is the subject of the investigation. RCW 51.04.040(2)(a) & (3). Before complying with a served subpoena, the third-party does not have to challenge the issuance and/or service of the subpoena. RCW 51.04.040.  Local 292 complied with the subpoenas because the subpoenas were "proper" and there was "no reason for the Local 292 to question the validity or authenticity of the subpoenas." Ex. E, at 3, ln.1-2.  Local 292's practice

is to comply. Ex. E, *Id.*, lns. 1-7.

For the periods June 6, 2005 through February 10, 2006 and July 1, 2005 through February 10, 2006, the State filed an Information charging Palmer with First Degree Theft and Welfare Fraud-First Degree on March 7, 2007.  Ex. C.  The state amended the Information, and on October 27, 2011, Palmer entered an Alford plea of Guilty and received a Felony Judgment and Sentence.  *State v. Gene Alfred Palmer II,* 07-1-00525-5, Dkts.#134 & #138.  November 10, 2011, Judge Castleberry ordered Palmer to pay $10,929.93 in restitution.  *Id.*, Dtk.#143.

**1. Palmer's Motion to Suppress**.

On October 28, 2009 Palmer responded  to L&I's investigative subpoenas, filing a Motion to Suppress the obtained evidence because the subpoenas violated his rights under Article 1, section 7 of the Washington  State Constitution. *Palmer II*, supra, Dkt.#93.  Snohomish County Prosecuting Attorney filed a Response Brief. Id., Dkt#104.  Judge Larry E. McKeeman denied the Motion to Suppress on March 5, 2010:

> Court's Decision: *The Court finds that seeking information about if an applicant is suffering from medical issues and if that applicant is working does not fall within the same scope as Miles and thus the Motion is Denied*.  The Court will allow the defendant to reserve regarding further information should it come to light.

*Id.*, Dkt.#103. (Emphasis added).

Palmer did not appeal Judge McKeeman's decision.  In this suit, Palmer alleges that the subpoena "violates my 4th Amendment right to illegal search and seizure.  Pltf's Comp. at 8, ln. 18-19.  Palmer's attorney argued that the state's Constitution provides greater protection than the "4th Amendment right to illegal search and seizure". *Palmer II*, supra, Dkt.#93 at 4, ¶ 1 & 2.

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292
7
NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

**2. Palmer's Unfair Labor Practice.**

February 10, 2010, Palmer filed an unfair labor practice charge (ULP) with The
National Labor Relations Board, Region 19 (NLRB), at Seattle, against Local 292 for disclosing
its work history records to L&I. <u>Ex. H</u>. On March 1, 2010, Palmer signed a NLRB Confidential
Witness Affidavit (WtnAff) declaring:

> [m]y allegations are related to the *Union's February 2006 disclosure of information
> to the Washington State Department of Labor & Industries ("L&I") regarding my
> use of the Union hiring Hall.* More specifically, *by disclosing information regarding
> my work history to one more agents of L&I, the Union breached my right to privacy,
> and its duty to keep information regarding my work history private.*

(Emphasis added). <u>Ex. I</u>, at 1, ¶ 2, ln. 5-9.  He then describes his injuries:

> *As a result of the Union's disclosure,* I have had to declare bankruptcy and, as a
> result, I have lost my home, vehicles, a boat, and most if not all of my material
> possessions.  I have become estranged from my ex-wife and son.

(Emphasis added). *Id.*, at 1, ¶ 2, ln. 9-10--p.2, ln.1-2.  Palmer continued, proffering the salient
fact:

> *I did not learn of the Union's involvement in this matter until December 3, 2009,*
> when, sitting in a judge's chambers during a recess in a state case against me,
> …that the Union cooperated with the L&I investigation.

(Emphasis added). *Id.*, at 2, ¶4, In. 23-25 –p.3, In. 1.

December 3, 2009 was the day that Palmer was arraigned on an amended information and
was before Judge Gerald L. Knight on his 3.5 and 3.6 motion hearing. *Palmer II*, supra, Dkt.#96.

On March 1, 2010, Palmer provided a copy of the Affidavit of Probable Cause in his
criminal case to the NLRB Board agent, describing it as "*the L&I investigator's discovery of my
work history and the Union's cooperation in that investigation.*" <u>Ex. I</u>, at 2, ¶4, In. 17-20.
(Emphasis added). He also asserted that "*[a]t some point in 2006, L&I suspected that I was*

*collecting disability benefits at a time when I was using the Union hiring hall to get work.*" Ex. I, *Id.,*#4, ln. 16-17. (Emphasis added).

On March 11, 2010, Region 19 Director Richard L. Aheam addressed a dismissal letter (DLET) to Palmer, noting that Local 292 cooperated with the L&I investigation in 2006, that the March 1, 2007, WtnAff described the cooperation and that Palmer obtained the WtnAff "*no later than November 2007*." Ex. J, at 1, ¶ 3, ln.13. (Emphasis Added.) Aheam opined "[r]egardless, *the alleged conduct occurred in February 2006, and you were or should have been aware of the Union's conduct in or before November 2007*". *Id.* at 1, ¶4, ln.16-18. (Emphasis Added).

Palmer provided the DLET and WtnAff to Judge Marsha J. Pechman, then Chief Judge, on December 19, 2013 in *Palmer v. Washington*, No. C98-1120 MJP, Doc. 96, pp. 40-46. Also, alleged in that case, as well as stated in WtnAff, was Palmer's "estrangement" allegation. P*almer v. Washington*, No. C98-1120 MJP, at *1, ¶ Background, ln. 4-5. *See* copy of Order filed on December 12, 2006 in 2:98-cv-01120-MJP, Doc. 92 at 10, ln. 2.

**D. Palmer's pleadings in 2014 established that the basis for this suit were known to Palmer.**

On June 9, 2014, Palmer filed a "Statement for Additional Grounds for Review" (STATEMENT) in *State v. Palmer II*, Court of Appeals, Div. I, No 71106-7-1 (2015). Ex. K. Nearly all the June 9, 2014 STATEMENT has been inserted word-for-word or derivatively paraphrased as the pleading in this suit. *Compare* Statement, ex. K w*ith* Pltf's Comp., at 7-15. (Pages are referenced because Plaintiff's complaint does not comply with Fed. R. Civ. P. 10 (b), and Local Rule 10(e)).

As an example, the STATEMENT pled, inter alia, "*On Monday I was scheduled to take*

*my flagger's recertification class in Kingston….[Francis Leaman] had approached one of the secretaries with a <u>phony subpoena</u> signed by a state employee.  He was trying to obtain all my employment records from the training center….Mr. Leaman tried the same thing at 292 (my union), and they…gave up my private employment information without a warrant, that violates my 4th Amendment right to illegal search and seizure."* And *"Dan Kristofferson (union representative) was calling Mr. Leaman and informing him where I would be working that day.*" <u>Ex. K</u>, at 2, ln. 4-16. (Emphasis Added.)

The flagging re-certification class was March 16, 2005, which Palmer attended and completed. <u>Ex.L</u>.  (Training Center Records).  Although the *phony* subpoena was dated January 5, 2006 and the flagging class was March 16, 2005, the "cooperation" and "disclosure" still occurred during the 2005-2007 time period.

Five years later, June 20, 2019, Palmer inserted verbatim from the STATEMNET into this suit:  "*On . . . Monday I was scheduled to take my flagger's recertification class in Kingston….[Francis Leaman] had approached one of the secretaries with a <u>phony subpoena</u> signed by a state employee.  He was trying to obtain all my employment records from the training center….Mr. Leaman tried the same thing at 292 (my union), and they …gave up my private employment information without a warrant"* and "*Dan Kristofferson (union representative) was calling Mr. Leaman and informing him where I would be working that day.*" Pltf's Compl. at 7, sens. 14-22 —p.8, sens. 16-21.

**E.  Palmer established through his litigation in the Bankruptcy Court, before the Board of Industrial Insurance Appeals (BIIA), and in the Court of Appeals his awareness that the complained of acts of a "nightmare" bankruptcy and the Restitution Order had occurred.**

January 2008, Palmer commenced a chapter 13 case in the U.S. District Court at Seattle

and then, in the same case, an adversary case against the State of Washington.  *In re: Palmer*, No. 08-1012-CMA & Adv. No. 15-01145-CMA.  On September 5, 2007, Palmer filed an appeal to Washington's BIIA from L&I's closure of his benefit claims.  *In Re A. Palmer, II*, BIIA Dkt. Nos.: 0721701 & 0721702 (2010).  And on October 22, 2013, Palmer filed an appeal of the trial court's restitution order to Washington's Court of Appeals, Div. I.  *State of Washington  v. Gene Alfred Palmer II*, No. 71106–7–I, 186 Wash.App. 1017 (2015) (Unpublished Opinion, Not Reported in P.3d).

The June 9, 2015 adversary case against the state, Palmer alleged that the State violated the automatic stay by continuing his Criminal Proceeding and entering the Restitution Order and that the Restitution Order was discharged in his bankruptcy.  *In re: Palmer, supra*, No. 08-1012, Dkt.#87.  On December 1, 2015, Judge Christopher M. Alston entered an Order and Dismissal that the criminal proceedings and restitution order did not violate the automatic stay and that the restitution order was non-dischargeable in bankruptcy.  *In re: Palmer*, Adv. Case, supra, Doc. #30, at 16, In.16-17---p. 17, In. 1-4.

In his appeal to the Board of Industrial Insurance Appeals (BIIA), Palmer asserted that the over-payments of benefits were dischargeable debts in bankruptcy. *In Re A. Palmer, II*, BIIA Dkt. Nos.: 0721701 & 0721702 (2010), at 6, In. 29; at 7, ln. 15-28.  "We agree entirely with the industrial appeals judge's determination that Mr. Palmer has failed to prove his discharge in bankruptcy precluded the Department from taking that offset."  *Id*., at 7, ln. 24-26.  BIIA's finding of fact was "the Department assessed an overpayment of time-loss compensation benefits…for the periods of June 6, 2005, through October 24, 2005, and November 6, 2005 to January 11, 2006.  The Department determined that the overpayment was induced by the

claimant's willful misrepresentation." *Id.*, at 12, #12, ln. 7-10.  At the time of those benefit

overpayments, Palmer was employed by  Archer Construction, Howard S. Wright Constructors

and Scarsella Brothers during June 2005 through October 2005.  <u>Ex. E</u>, at 3, ¶ 8, ln. 25-27—p. 4,

<u>ln. 1-2</u>; <u>Ex. F</u> at 3.  On June 10, 2010 the BIIA dismissed the appeals. *In Re A. Palmer*, supra*,* at

1, ln. 20 & 28.

October 22, 2013, Palmer filed a Notice of Appeal from the trial court's restitution order

to Washington's Court of Appeals.  *State v. Gene Alfred Palmer II,* 07-1-00525-5, Dkt.#161.  In

the Court of Appeals, Palmer claimed, "that he was not aware of the restitution order and did not

knowingly waive his right to appeal therefrom."  *State v. Palmer II*, No. 71106–7–I, at *1, ln. 4-

5.  The Court noted that "Palmer had filed for Chapter 13 bankruptcy, which was approved on

May 21, 2010, and he was of the belief, which he has since often repeated, that any restitution

ordered would be dischargeable in bankruptcy".  *Id.,* at *2, ln. 8-10. (Footnote Omitted.).  The

Court further stated, "Palmer may now feel remorse over his flawed legal analysis that restitution

was dischargeable in bankruptcy . . . ."  *Id.*, at *4, ln. 18.  The Court denied the appeal on March

9, 2015, explicating the factual basis for the denial, and his petition for review to the Washington

Supreme Court was denied on September 2, 2015. *State v. Gene Alfred Palmer II,* 07-1-00525-5,

Dkt#192.

**Pursuant to the Court's Chambers Procedures, Counsel on behalf of all parties have
conferred prior to the filing of this Motion.  Dkt. No. 16 at 4, ¶ 6.**

### ARGUMENT

**I. Washington's Three-year Statute of Limitation Bars Plaintiff's 1983 Claim and Pendent
State Tort Claims.  RCW 4.16.080 (2)**

Palmer alleges a 1983 claim and various pendent state tort claims.  The Civil Rights

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292                    12                    NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

Act, 42 U.S.C. 1983, does not provide a specific statute of limitation provision, and therefore, federal districts courts apply state statute of limitations to 1983 claims.   42 U.S.C. 1988(a). "Title 42 U.S.C. § 1988 endorses the borrowing of state law limitations provisions where doing so is consistent with federal law . . . ." *Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L.Ed. 2d 594(1989).

 "In Washington State, the three-year limitations period for any other injury to the person or rights of another contained in R.C.W. 4.16.080(2) applies to § 1983 claims." *Scott v. Washington,* Case No. 2:19-CV-00517-RAJ-BAT (April 11, 2019); *Conway v. Standard Ins. Co.*, 23 F. Supp. 2d 1199, 1200 (E.D. Wash. 1998)("In a civil rights case, that is the personal injury statute . . . . In Washington, the period is three years. RCW §4.16.080(2)").

Federal law determines when a claim accrues and when the limitations period begins to run. *Fobbs v. Holy Cross Health Systems Corp*., 29 F.3d 1439, 1444 (9th Cir. 1994), cert. denied, 115 S. Ct. 936 (1995).  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Bagley  v. CMC  Real Estate Corp.,* 923 F.2d 758, 761-762 (9th Cir. 1991), cert. denied, 502 U.S. 1091 (1992).

"To determine when a claim accrues, the federal court thus focuses on the time period in which the complained of acts occurred, not on the time period in which the consequences of the acts became most painful". *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979). *Scott*, supra.

When claims accrued and the injury is known, which is outside the three-year statute of limitation, relief cannot be granted because there is a failure to state the claim before the three-year statute bars the claim.  A motion to dismiss the claim may be made for "failure to state a

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292

13

NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The three-year statute of limitation bars Palmer's 1983 claim and pendent state tort claims because his claims accrued years before commencing his action on June 20, 2019.   A mere reading of the complaint shows this.

The plain reading of Palmer's complaint is a focus, exclusively concentrated on the 2005-2008 time period in which Local 292's "cooperation" and "disclosure" had occurred.  The complaint looks back to (1) Palmer's antecedent L & I theft-work investigation in 2005-2006, (2) to Palmer's criminal and restitution proceedings initiated in Snohomish Superior Court in 2007 and (3) Palmer's bankruptcy case filed in the United States Bankruptcy Court Western District at Seattle in 2008.  Pltf's Comp. at 4-16.

Palmer focused singularly on 2005-2008 time period, characterizing it as "the crux of the matter" and "this nightmare".  The 2005-2008 time period was not an anodyne moment in Palmer's life, rather, palpably personal: arrested, incarcerated, allegedly harmed physically, emotional trauma, economic consequences, and confinement at Western State Hospital.

 Looking back to that point of origin, in which the complained of "cooperation" and "disclosure" giving rise to this action had occurred, is the time period when the1983 claim and pendent state tort claims accrued and when the three-year limitation began to run.  Palmer recently bolstered this accrual date by filing "*Plaintiff's Supplemental Evidence in Support of Complaint*", Doc. 14, which looks back to documents dated June 1, 2005 and June 24, 2008, and a request for past prison records at the Correctional Center in Shelton and transfers to Monroe Correctional Complex..  Similarly, his recently proposed August 29, 2019 "JOINT STATUS REPORT AND DISCOVERY PLAN", is backward-looking:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1. **Statement of Nature of the complexity of the case**.  <u>Ex. M.</u>

This case is a complicated fact pattern of Washington State Labor and Industries various amounts owed to plaintiff and alleged offsets and claims of overpayment in civil and criminal cases in two counties and several courts.  Also, issues regarding collusion of State with a union and Snohomish County excessively jailing plaintiff and holding him while under mental evaluation . . . .

In this suit, the accrual date is the 2005-2008 time period established by specific pleadings and documents.  Palmer knew for years that the "cooperation" and "disclosure" had occurred on February 10, 2006.  Palmer knew and described his alleged injury resulting from  the "cooperation" and "disclosure in March 2010 to the NLRB.  Palmer pled and litigated in other venues in 2010, 2014, and 2015 that the "cooperation" and "disclosure" acts had occurred.  The 2005-2008 time period established that Palmer's causes of action accrued, that the three-year statute of limitation began and ran, and that Palmer knew the basis of his federal and state claims prior to commencing this suit on June 20, 2019.

**A.  The acts of "cooperation" and "disclosure" occurred on February 10, 2006 and "every time" Palmer "was sent out".**

The State's Affidavit of Probable Cause (AFFIDAVIT) established a fact beyond dispute that Local 292's "cooperation" and "disclosure" with L&I had occurred on February 10, 2006, when Francis Leaman received the "call from Union Local 292 that …Palmer was working for … ARM."  <u>Ex. D</u>, at p. 2. Palmer admits the event occurred:  "Leaman received the call from Dan at 9:00 in the morning after I was sent out on a job by dispatch".  <u>Pltf's Comp.</u> at 9, ln. 20-21.  Palmer elaborated:  "[Leaman and Dan] would do this *every time* I was sent out, . . . ." *Id*., ln. 22.  (Emphasis. added).

The work history records proved that Palmer's only employment and only employer in February 2006 was ARM and "every time I was sent out" was when Local 292 referred Palmer

1

2

3

to ten contractors (a few more than once) between June 2005 through March 2007. Ex. E at 3, ¶8,

4

ln. 24 & ¶7, ln. 11-14;  Ex. F at 3.  This is the only time period in which the "cooperation" and

5

"disclosure" could have occurred and not thereafter because Palmer's membership terminated on

6

April 2, 2007.  Palmer was never again "sent out" for employment by Local 292 after March 31,

7

2007.  Ex. E, at 2, ¶ 5, ln. 17-21, & at 3, ¶ 7, ln. 14-20, at 4, ln. 1-3; Ex. F, at 2, ¶ 8, ln 3-4, & at

8

3.  And it could not have occurred in the five months prior to June 2005, because Local 292

9

never "sent out" Palmer for employment then, nor in 2004 and 2003.  Ex. E, at 3, ln. 18-20; Ex.

10

F, at 2, ¶ 8, ln.3-4, at 3.

11

12         The work history records further established that Palmer had worked for *ARM* and five

13

other contractors named in the AFFIDAVIT during the period June 2005 through February 2006.

14

Those same contractors were among the contractors covered by L&I's January 2006 and August

15

2006 subpoenas. Ex. A; Ex. B.  The June 2005 through February 2006 period includes the

16

specific time period covered by the Information's theft dates:  June 6, 2005 to February 10, 2006

17

and July 1, 2005 through January 31, 2006.  *Gene Alfred Palmer II, supra*. Dkt.#1.

18

19         As a result of L&I's investigation that began in January 2006, Palmer was arrested and

20

arraigned at 1:00 p.m. on July 10, 2007 on the Information's theft charge covering June 6, 2005

21

through February 10, 2006.  *Palmer II,* supra, Dkt.#11. Palmer pled guilty to an amended

22

Information covering the same period of June 6, 2005 through February 10, 2006.  *Palmer II*,

23

supra, Dkts.#134 & #138.

24

25         The acts underlying Palmers 1983 claim and pendent state tort claims had occurred in the

26

2005-2007 work period and were known to Palmer years before this suit commenced on June 20,

27

28

2019.  Palmer's claims accrued at least twelve to fourteen years prior to filing this suit.  The

three-year statute of limitations bars Palmer's causes of action.

**B.  Palmer knew his injuries underlying his federal and state claims before filing this suit on June 20, 2019.**

Nine years before June 20, 2019, Palmer identified his injuries from Local 292's

"cooperation" and "disclosure" with L&I.  On March 1, 2010, Palmer admitted to the NLRB's

agent that he had injuries "as a result of the Union's disclosure". Ex. I, at 1, ¶ 2, ln. 9-10. Palmer

described those injuries to NLRB's agent.  Ex. I, at 1, ¶ 2, ln. 5-10---pg. 2, ln.1-2; at 3, ¶ 6, ln.

16-18; at 3, ¶ 7, ln. 24---p. 4, ln. 1-2.

On March 1, 2010, Palmer knew his injuries that are the basis of his federal suit.  *Bagley*

*v. CMC  Real Estate Corp.,* 923 F.2d 758, 761-762 (9th Cir. 1991), cert. denied, 502 U.S. 1091

(1992).  Palmer's 1983 claim and the various pendent state tort claims accrued nine years before

commencing this suit on June 20, 2019, and therefore, the three-year statute of limitation bars

this suit.

**C.  Palmer's pleadings and litigation in other venues established that Palmer knew the basis of his federal and state claims well before this suit commenced on June 20, 2019.**

Palmer filed pleadings in June 2014 and in March 2010 with Washington's Court of

Appeals,  Division I, and with the National Labor Relations Board, Region 19, at Seattle.

Also, Palmer litigated substantive issues in 2015 before the US Bankruptcy Court at Seattle and

in 2010 before the Washington Board of Industrial Insurance Appeals.  Those pleadings and

litigation became allegations in his complaint and an explicit focus of his suit.

**1. *State v. Palmer*, No 71106-7-I, 2014 WL 4489022 (Wash.App. Div. 1, June 9, 2014)(Appellate Brief)**

Five years prior to filing this suit, appearing pro se, Palmer filed on June 9, 2014 in

*Palmer*, *supra*, a significant pleading he called a "Statement for Additional Grounds for Review" (STATEMENT).  Ex. K.  Except for the first-five paragraphs, the STATEMENT became the verbatim allegations or derivatively paraphrased allegations pled in this federal lawsuit, including the issues surrounding his bankruptcy case and restitution obligation.  *Compare* STATEMENT, ex. K, at ¶s*2-*5, pp. 1-3 *with* Pltf's Comp. at 7-12.  Those precise acts of "cooperation" and "disclosure" between L & I and Local 292, are taken undisputedly from the STATEMENT, and are pled in this court as the basis for Palmer's 1983 claim and pendent state tort claims.  This is not the only language taken from another proceeding and placed, out of context, into this suit:  "These are the additional documents …withheld…*from this bankruptcy case . . .* which was the basis of *this adversary proceeding."* Pltf's comp., at 4. (Emp. added.) Or, this curious insert:  "Dan….told….federal investigator (see below)". *Id.* at 8.

These identical pleadings are an evidentiary fact that Palmer's causes of action had accrued, were known to Palmer in June 2014, and the limitation period began and ran five-years before Palmer commenced this suit on June 20, 2019.

### 2.  NLRB Case 19-CB-10025, Laborer's Local 291 (Archer Construction).

Nine years before filing his federal suit, Palmer provided a Confidential Witness Affidavit (WtnAff) to the NLRB, Region 19, on March 1, 2010, and was the addressee of the Regional Director's letter (DLET) dated March 11, 2910.  Ex. I; Ex. J.  Both documents support the fact that Palmer's 1983 claim and pendent state tort claims had accrued and were known to Palmer nine-years before commencing this suit on June 20, 2019.

In the WtnAff, Palmer admitted knowing ten-years prior to filing this suit, that "December 3, 2009" was the date when he had learned of Local 292's cooperation with the "L&I

investigation". <u>Ex. I</u>, at 2, ¶ 4, ln. 24.  Also, his signature and dating the WtnAff established

March 1, 2010 as another date confirming his awareness of the "Union's February 2006

disclosure of information to "L&I"---"by disclosing information regarding my work history." <u>Id.</u>,

at 1, ¶ 2, ln.5-8.  Nine and ten-years before commencing this suit, Palmer's claims accrued.

Moreover, Palmer admitted the consequential and undeniable fact that he provided on

March 1, 2010 to the NLRB agent a copy of the March 7, 2007 Probable Cause Affidavit that

supported the criminal Information file on March 7, 2007.  <u>Ex. I</u>, at 2, ¶ 4, ln. 17-20.  The

Affidavit detailed the "cooperation" and "disclosure" between L & I and Local 292 in February

2006.  It specified the period of the theft crime—June 2005 through February 2006—and the

nexus to his work history at that time.  Palmer had that Affidavit "no later than November 2007"

according to the investigation by NLRB's Regional Director.  <u>Ex. J</u>, at 1, ¶'s 3 & 4.

Nine years preceding this suit, the NLRB's Regional Director's dismissal letter (DLET)

dated March 11, 2010 established that (1) no later than "November 2007 Palmer "obtained" a

copy of the Probable Cause Affidavit; (2) the "union cooperated with an L&I investigation in

February 2006; (3) the "union's February 2006 cooperation" was described in the Probable

Cause Affidavit; and (4) Palmer was aware of the "Union's conduct in or before November

2007.  <u>Ex. J</u>, at pg. 1, ¶'s 3 & 4.  Also, the letter is itself another date establishing that Palmer had

been presented with the complained of acts forming the basis of his causes of action nine years

before filing this suit on June 20, 2019.  Palmer's claims accrued nine-years to twelve-years

before he filed this suit and the statute of limitation bars all of his claims against all defendants.

Three years after the DLET and on December 19, 2013, Palmer provided the WtnAff and

DLET to Judge Marsha J. Pechman, then Chief Judge, in *Palmer v. Washington*, No. C98-1120

MJP, <u>Doc. 96, pp. 40-46</u>, re-affirming his awareness that the cooperation and disclosure had occurred years before filing this suit.  Once again, Palmer's claims are time barred.

All the referenced dates, as well as the WtnAff and DLET, and presentment to Judge Pechman, support a consistent and essential fact beyond dispute which Palmer knew and had known for six years, nine years, ten years and twelve-years that his 1983 claim and pendent state tort claims had accrued before filing this suit.  The three-year statute of limitation bars this suit.

**3.  *In re Gene Palmer*, W.D.BK.C., No. 08-10112-CMA & Adv. No. 15-01145-CMA, *In re  A. Palmer, II*, BIIA, Dkt. Nos.: 0721701 & 0721702 (2010), and *State v. Palmer II*, No 71106-7-I, 186 Wash.App. 1017 (Wash.App Div. I, March 9, 2015), Unpublished Opinion, Non-Binding, Not Reported in P.3d(2015).**

A focus of Palmer's complaint is upon the 2008 time period emphasizing his Bankruptcy and L&I collection issues.  The complaint repeatedly asserts the issues of the automatic stay, restitution order and dischargeable L&I debt as core allegations in this suit.  <u>Pltf's Comp.</u> at 3, 5,6,12,14,15.  Palmer litigated those issues in the U.S. Bankruptcy Court at Seattle, before the Board of Industrial Insurance Appeals in September 2007, and on appeal to Washington's Court of Appeals, Div. I., in October 2013.

In the bankruptcy adversary proceedings, on December 12, 2015, the court opined that the State of Washington had not violated the automatic stay (U.S.C. ¶ 362(a) by continuing its criminal case and ordering restitution.  *In re Gene Palmer*, supra., Adv. Case, <u>Doc. 30</u>.  On June 10, 2010, the Board of Industrial Insurance Appeals determined that L&I's debt collection for overpayments of benefits was not dischargeable in bankruptcy. *In re A. Palmer, II*, supra, at 7, ln. 15-28.  In the Court of Appeals, Palmer had sought relief by motion from the trial court's restitution order and appealed the restitution payment schedule, which the Court denied with

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

explanation and noted that "Palmer may now feel remorse over his flawed legal analysis that restitution was dischargeable in bankruptcy." *State v. Palmer*, No 71106-7-1 at *4, ln. 18. (August 9, 2015).

Eleven, nine and four years passed while Palmer sat on his causes of action after his claims had accrued and the limitation period had run, before Palmer filed this suit.  The three-year statute of limitation bars Palmer's 1983 claim and pendent state tort claims, and therefore, the Court should dismiss with prejudice Palmer's causes of action against all defendants.

## II.   The Rooker-Feldman Doctrine Bars Palmer's Suit.

The Rooker-Feldman Doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments . . . . Stated simply, the Rooker-Feldman doctrine bars suits brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Carmona v. Carmona*, 603 F.3d.   (9th Cir. 2010).  A suit brought in federal district court is a "de facto appeal" forbidden by Rooker-Feldman when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court" and "seeks relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

In this suit, Palmer's requested relief is:  "Vacate Criminal Case" and  "I request that the court order the State of Wa.,  AG Department and L and I Department immediately vacate the conviction for False Information and dismiss the case with prejudice in Snohomish County Superior court Cause number 07-1-00525-5."  Pltf's Comp. at 20.  Palmer's suit is a de facto appeal from the trial court's felony judgment and sentence, requesting this court to "immediately

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292

21

NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

1

2

3
vacate his conviction" and "dismissal with prejudice". *State v. Palmer*, No. 07-1-00525-5.

4
        The Rooker-Feldman Doctrine precludes Palmer's suit and it should be dismissed with

5
prejudice.

6
**III. A Court may consider matters outside the pleading to decide a 12(b)(6) motion to**

7
**dismiss for failure to state a claim.**

8
        On a Rule 12(b)(6) motion to dismiss, the district court may "consider certain materials

9
— documents attached to the complaint, documents incorporated by reference in the complaint,

10
or matters of judicial notice — without converting the motion to dismiss into a motion for

11
summary judgment.  Certain written instruments attached to pleadings may be considered part of

12
the pleading. See Fed.R.Civ.P. 10(c).  Even if a document is not attached to a complaint, it may

13
be incorporated by reference into a complaint if the plaintiff refers extensively to the document

14
*or the document forms the basis of the plaintiff's claim.*"  *United States v. Ritchie*, 342 F.3d 903,

15
908-09 (9th Cir.2003). (Emphasis added.)  *See also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

16
2006).

17

18
        A district court "may take judicial notice of matters of public record" and consider them

19
without converting a Rule 12 motion into one for summary judgment."  *U.S. v. 14.02 Acres of*

20
*Land More or Less*, 547 F.3d 943, 955 (9th Cir. 2008).  "Judicial notice is appropriate for records

21
and "reports of administrative bodies."  *Id.*, citing *Interstate Natural Gas Co. v. S. Cal. Gas Co.*,

22
209 F.2d 380, 385 (9th Cir. 1954)(We may take judicial notice of records and reports of

23
administrative bodies.); *Ritchie*, *supra*, at 909.

24

25
        The exhibits to this motion are submitted for consideration based on: "*the document forms*

26
*the basis of the plaintiff's claim*" and the court "may take judicial notice of matters of public

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

records."  The exhibits are integral to the plaintiff's claims.  Palmer's complaint necessarily relies upon these documents as the basis of this federal suit.  For example, <u>exs. A</u> & B, the subpoenas, are core elements predicating liability in this suit on the fact that Palmer claims occurred when Local 292 cooperated and disclosed its work history records regarding him to L&I:  "[*t*]*hat violates my 4th Amendment right to illegal search and seizure.*"  And in another document created by Palmer, <u>ex. I</u>, he states his injuries "[*a*]*s a result of the Union's disclosure*" to L&I.

These exhibits are documents Palmer submitted to federal and state courts, submitted to federal and state administrative agencies, and are documents under seal and are public records of administrative agencies.  <u>Ex. F</u> attached to the authenticating affidavit is the work history records upon which the Information is based and referenced in the supporting Affidavit of Probable Cause.  *See* <u>ex. C</u> & <u>D</u>.   <u>Exs. E, G</u> & <u>L</u> are supportive documents of the Palmer's complaint referring to "*job by dispatch*", his "*flagger's recertification class*" (first subpoena attempt to obtain the work history records), and <u>Ex. E</u> explicating the work history records to which Palmer's complaint deploys this attention----"[See Exhibit D for L&I  Union documents involved]."---to support "*violates my 4th Amendment right*."  <u>Exs. H, I, J</u>, & <u>K</u> are public records created and submitted by Palmer to federal and state courts and federal and state administrative agencies.  <u>Ex. M</u> is Palmer's statement in a document required by Order of this court. <u>DKT. #10</u>.

Exhibits A & B are records of the Washington's Laborer & Industry; Exhibits C & D are court records with Docket Numbers 1 & 2 filed in *State v. Palmer II, Gene Alfred*, No. 07-1-00525-5; Exhibits H, I & J are records of the National Labor Relations Board, Region 19 and exhibits I & J were submitted by Palmer to Judge Marsha J. Pechman, then Chief Judge, in *Palmer v. Washington,* No. C98-1120 MJP, Doc. 96, pp. 40-46; Exhibit K is a court record authored and submitted by Palmer in *State v. Palmer II*, Court of Appeals, Div. I, No 71106-7-1,

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292

23

NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873

1
2
3
(*State of Washington v. Gene Palmer*, 2014 WL 4489022 (2014)).

4
5
6
Exhibits A,B,C,D,H,I,J and K are documents upon which Palmer's complaint relies to form the basis of his claims and are in pleadings, federal and state courts and administrative agencies, that were pursued years before this action was begun on June 20, 2019.

7
8
Exhibits E, F, G & L are documents whose contents Palmer's complaint relies and forms the basis of his claims, e.g. work history records.

9
CONCLUSION

10
11
12
13
Palmer's claims are time-barred because Palmer had actual knowledge of the complained of cooperation and disclosures and the injury that it caused more than three years before commencing this action on June 20, 2019.  It is a de facto appeal from a state criminal judgment precluded by the Rooker-Feldman Doctrine.

14
Dated this 1st day of February 2020.

15
16
17
/S/Noel McMurtray
Noel McMurtray, WSBA # 12383
Attorney for the Defendants

18
CERTIFICATION

19
20
21
I, the undersigned, certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys for the defendants, and that I have mailed by United States Postal Service a copy of the foregoing to the plaintiff, this 7th day of February 2020.

22
23
/S/ Noel McMurtray
Noel McMurtray, WSBA# 12383

24
25
26
27
28

DFTS' MOTION FOR SUMMARY
JUDGMENT 19-CV-00961-RAJ
DIST. COUNCIL AND LOCAL 292

24

NOEL MCMURTRAY
P.O. BOX 3324
BELLEVUE, WA. 98009
206-419-3873